IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DERRICK HOBSON                                                              PLAINTIFF

v.                           Civil No. 04-6148

CAPTAIN STEED;
DEPUTY WYNN;
DEPUTY SHIRLEY;
DEPUTY DUNN;
DEPUTY WORLEY; and
DEPUTY GRINNESS                                  DEFENDANTS

## MEMORANDUM OPINION

Before the court for decision is the defendants' motion for summary judgment motion (Doc. 30). To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded to the plaintiff (Doc. 34). Plaintiff's response to the questionnaire was filed as his response to the summary judgment motion (Doc. 35).

## BACKGROUND

Derrick Hobson was incarcerated at the Garland County Detention Facility (GCDF) from June 26, 2004, until January 17, 2005. *Plaintiff's Response* (Doc. 34)(hereinafter *Resp.*) at ¶ 9. He was being held on pending criminal charges. *Id.*

On July 7, 2004, Hobson reported that he fell from the top bunk in the middle of the night. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 11. He was taken to St. Joseph's Emergency Room by ambulance. *Defts' Ex.* C; *Resp.* at ¶ 17. He was treated for a bruised shoulder, prescribed Ibuprofen, told to rest, put ice on and elevate the injured area as much as

possible, and to follow up with Dr. Hale. *Defts' Ex.* C; *Resp.* at ¶ 20.

During all times relevant to the complaint, the defendants were employed as detention facility officers at the GCDF. *Resp.* at ¶ 2. In non-emergency situations, when an inmate of the GCDF needs medical care, the inmate is directed to complete a medical request form which is reviewed by a supervisor and then forwarded to Dr. Hale for review. *Resp.* at ¶ 3; *Defts' Ex.* 1 at ¶ 4. If the decision is made that the inmate needs to see the doctor, the inmate is scheduled for an appointment with Dr. Hale at his regular visit. *Id.* If an inmate is in need of emergency medical care, the inmate is either transported to the emergency room or an ambulance is summoned to provide medical care. *Resp.* at ¶ 6; *Defts' Ex.* 1 at ¶ 4.

Dr. Hale sees inmates at the jail at least once a week. *Defts' Ex.* 1 at ¶ 4. According to Captain Mel Steed, all directives of Dr. Hale, prescription medications, referrals, x-rays, or other orders, are complied with by the detention facility staff. *Id.*

According to Hobson, he was not seen for two weeks even though he put in numerous medical requests and grievances. *Resp.* at ¶ 4. Further, Hobson contends his medical diagnosis from St. Joseph's was not followed by staff. *Id.* at ¶ 5, ¶ 7 & ¶ 17. Specifically, he states he did not receive the ice bags for his swollen shoulder. *Id.* at ¶ 25. Hobson states Deputies Worley, Dunn, Grinness, and Shirley never brought him ice bags or moved him to a bottom bunk. *Id.* at ¶ 29. However, he then states Shirley did eventually place him on a bottom bunk and brought him ice after repeated grievances. *Id.*

Because he did not get ice bags on the prescribed basis, Hobson maintains calcium deposits set in and Dr. Hale raised his medication to Toradol. *Id.* According to Hobson, Dr. Hale also said Hobson should be on a bottom bunk but it took a few weeks for him to get a

bottom bunk. *Id.* Hobson states he showed the St. Joseph's diagnosis to several deputies and submitted grievances to Captain Steed. *Id.* at ¶5, ¶ 7 & ¶ 17.

According to Captain Steed, the GCDF has a policy of providing a safe environment for all persons detained there. *Defts' Ex.* 1 at ¶ 6. If something is in need of repair or has broken, detention personnel are to notify the maintenance department to allow them to make all reasonable and necessary repairs. *Id.*

According to Captain Steed, Hobson was not required to sleep on a top bunk. *Defts Ex.* 1 at ¶ 8. Even if a top bunk was assigned, if for medical reasons, plaintiff could not have "accommodated a top bunk," Captain Steed states he "would have been reassigned to a bottom bunk." *Id.* Furthermore, Captain Steed indicates that if Hobson did not want to sleep on the top bunk, he could have always moved his mattress to the floor. *Id.* According to Captain Steed, at no time prior to Hobson's alleged fall did Hobson report to any detention facility employee that "he could not physically accommodate a top bunk sleeping arrangement." *Id.*

The GCDF has double bunked cells. *Resp.* at ¶ 10. Hobson states that he was told because of a prior surgery to his right shoulder and a knee problem he would be placed on a bottom bunk. *Id.* at ¶ 11. However, he was assigned a top bunk in tank D that needed repairs. *Id.* Hobson states he was not reassigned to a bottom bunk until after he fell. *Id.* According to Hobson, he was not reassigned despite the fact that he wrote several grievances and medical requests asking for a bottom bunk. *Id.* at ¶ 13.

With respect to his ability to move the mattress to the floor, Hobson asserts that when he did that and deputies came to count, they would tell him to get off the floor. *Resp.* at ¶ 14. Hobson states when he told the deputies about the bunk needing repairs and his medical

condition he was told to "shack up with my cell mate or continue writing grievances." *Id.* Because of this, Hobson states he continued submitting grievances. *Id.*

Hobson asserts that he reported that his upper bunk was broken before his fall. *Resp.* at ¶ 8. Despite his report, Hobson states the bunk was not repaired until approximately three months after his fall. *Id. See also Resp.* at ¶ 11 & ¶ 12. After the fall, Hobson indicates he was placed on a bottom bunk by Dr. Hale. *Id.*

Defendants assert Hobson submitted ten written medical requests during his incarceration at the GCDF with the first request dated August 1, 2004. *Defts' Ex.* B. However, Hobson indicates he submitted several written medical requests prior to his fall on July 7, 2004, stating that he needed a bottom bunk or at a minimum needed the bunk repaired. *Resp.* at ¶ 16. Hobson also indicates he was told by Deputy Grinness that some of the medical requests Hobson wrote never made it to Dr. Hale and some of Hobson's grievances never made it to Captain Steed. *Resp.* at ¶ 15.

Hobson was seen by either Dr. Hale or the nurse on more than five times while he was detained at the GCDF. *Resp.* at ¶ 21. On September 13, 2004, Dr. Hale diagnosed a left shoulder strain and discontinued the Ibuprofen and prescribed Toradol. *Defts' Ex.* D at page 2. Although one of the medical records indicates Hobson refused to see Dr. Hale, *see defts' ex.* D at page 6, Hobson contends Dr. Hale advised him that there was no need for Hobson to see Dr. Hale again and that a referral was standard, *resp.* at ¶ 21. Dr. Hale did not make a referral. *Resp.* at ¶ 26. Instead, according to Hobson, Dr. Hale told Hobson to see a shoulder specialist Dr. Hale knew when Hobson got released. *Id.* Hobson indicates he could not afford such treatment. *Id.*

As a result of Dr. Hale's orders, the defendants obtained medications for Hobson while

-4-

he was incarcerated at the GCDF. *Resp.* at ¶ 22. Hobson began receiving medications on July 8, 2004, and continued receiving medication until he was released from the GCDF. *Resp.* at ¶ 23. He received extensive amounts of medication while detained at the GCDF. *Id.* at ¶ 24.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## DISCUSSION

As noted above, Hobson was incarcerated at the GCDF awaiting trial on pending criminal charges. He was therefore a pretrial detainee. The Eighth Circuit has held that deliberate indifference is the "appropriate standard of culpability for all claims that prison officials failed

to provide pretrial detainees with adequate . . . medical care and reasonable safety," *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). In this case, Hobson is asserting two separate claims: (1) defendants were deliberately indifferent to his safety when they assigned him to a top bunk despite his medical condition and failed to repair the bunk when notified it was broken; and (2) defendants were deliberately indifferent to his serious medical needs.

### *Reasonable Safety*

To prevail on his conditions of confinement claim, Hobson must show: (1) the condition was serious enough to deprive him of the minimal measure of life's necessities, or to constitute a substantial risk of serious harm; and (2) officials were deliberately indifferent to the inmates' or detainees' health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). *See also Rahman X v. Morgan*, 300 F.3d 970 (8th Cir. 2002). "A defendant cannot be found liable under the 'deliberate indifference' standard . . . unless that defendant 'knows of and disregards an excessive risk to inmate health or safety.'" *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999)(*quoting Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

We find no genuine issue of material fact as to whether defendants exhibited deliberate indifference to Hobson's safety. Hobson concedes he was told that the policy of the facility allowed for him to be reassigned to a bottom bunk for medical reasons. *Resp.* at ¶ 11. While it appears this policy may not have been followed, nothing before the court establishes this was the result of anything more than a misunderstanding. Hobson was not booked into the GCDF until June 26, 2004. His fall occurred a few days later on July 7, 2004.

During the intervening period, Hobson was not prevented from placing his mattress on

-6-

the floor so that he could avoid using the top bunk. The only period of time when he was not allowed to be on the floor was while deputies were counting the number of inmates in the facility.

With respect to the alleged need of the bunk for repair, the earliest Hobson could have reported this was on June 26, 2004. As just noted, the time period between Hobson being booked into the facility and his fall from the bunk was not lengthy. There is no evidence there was a deliberate delay in the repair of the bunk, that there was a strong likelihood that an injury would result from the condition of the bunk, or that any of the named defendants were aware of any risk to Hobson's safety. In short, there is simply nothing to establish that the defendants were deliberately indifferent to Hobson's safety.

### *Medical Care*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a

AO72A
(Rev. 8/82)

constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Hobson's claim is largely premised on the failure of the defendants to provide him with ice bags in accordance with the instructions given by St. Joseph's. As a result, Hobson contends calcium deposits built up in his shoulder. Although Hobson contends he was

told about the calcium deposits by Dr. Hale, nothing in Dr. Hale's notes make any mention of calcium deposits in Hobson's shoulder, or the fact that Hobson not being provided ice bags contributed in some way to a build up of calcium in the shoulder, or that Dr. Hale changed Hobson's medication to Tramadol because of this buildup. *Defts' Ex.* D. Hobson received the medication prescribed by the hospital and by Dr. Hale. *Defts' Ex.* E. Hobson was moved to a bottom bunk after his fall. *Resp.* at ¶ 11 & ¶ 12.

It is obvious from the undisputed facts that Hobson was not denied medical attention. Hobson received medical attention on multiple occasions and his requests for medical treatment were evaluated by medical personnel. With the exception of the ice bags which appear to have been ordered by the hospital for two or three days, Hobson received all medical care ordered by the medical personnel who treated him. Moreover, other than his unsupported assertion, Hobson has presented no evidence that his failure to receive the ice bags as prescribed, had any detrimental impact on his health. *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)(inmate who complains about delay in medical treatment must present verifying medical evidence of detrimental effect of delay). We note in this regard that at one point Hobson states he never received the ice bags and at another point he states he received ice after writing several grievances and/or medical requests. *Resp.* at ¶ 25 & ¶ 29.

Moreover, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990). In this case, with the possible exception that one of more of the named defendants were on duty and did not bring Hobson an ice bag, there is no indication the named defendants made

AO72A
(Rev. 8/82)

any decisions regarding Hobson's medical care or the medication he should be prescribed. Instead, all treatment decisions were made by hospital personnel and/or Dr. Hale. *See also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence the defendants were medical personnel or were personally involved in making medical decisions about the plaintiff's treatment); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)(section 1983 liability requires personal involvement, or allegation that supervisor had knowledge of unconstitutional conduct and turned blind eye to it).

## **CONCLUSION**

For the reasons stated, the defendants' motion for summary judgment (Doc. 30) will be granted. A separate order in accordance with this opinion will be entered.

DATED this 11th day of January 2007.

> /s/ Robert T. Dawson
> UNITED STATES DISTRICT JUDGE

AO72A
(Rev. 8/82)